IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| METRIC CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-635C |
| | ) | (Judge Charles F. Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESSES AND DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERABLE INFORMATION**

After months of amicable discovery, including jointly agreed-upon modifications to the discovery schedule, and as the completion of discovery was approaching, plaintiff Metric Construction Co., Inc. ("Metric"), refused to cooperate with a final production of discoverable information and, instead, is now attempting to prevent defendant's experts from conducting a full examination of Metric's claim and even seeks to exclude defendant's experts from testifying altogether. Metric's motion to exclude is without merit and obstructionist and should be denied. Further, we ask the Court to compel production of the discoverable information we have requested (contained in Exhibit F, attached, and reprinted below), to stay the proceedings in this case until Metric fully complies with the Court's order, and to establish a new discovery deadline and pretrial schedule only upon our notification to the Court that Metric has fully complied with the Court's order.

## ARGUMENT

I. Metric's Motion To Exclude Should Be Denied

Discovery had occurred following the September 29, 2004, joint preliminary status report upon a mutually agreed basis. In addition to accomplishing document inspections and the depositions of several fact witnesses, discovery included two jointly agreed extensions of the discovery schedule. The first discovery extension was agreed upon because Metric wished to engage witnesses who profess to be experts in cost and schedule/delay analysis in an attempt to buttress Metric's certified claim – which is notably lacking in support for the cost and scheduling/delay elements.

The second discovery extension, which is particularly germane to this dispute, occurred after Metric's expert reports were issued. The purpose of the second discovery extension was to provide the Government with the same opportunity that Metric took – to permit the Government's experts to perform their work, issue reports, and then be deposed. On December 20, 2005, the parties informed the Court that they

> . . . are continuing with discovery and exchange of expert materials. Depositions of plaintiff's experts are scheduled for January 30 and 31, 2006, and the defendant has retained experts who will conduct their analysis, issue reports by February 15, 2006, and be available for deposition to be conducted by March 15, 2006. We propose to advise the Court of the status of the case and to propose a schedule for pretrial

> proceedings in a status report to be filed by March 30, 2006.

Exhibit A (emphasis supplied).

Although Metric relies upon this joint status report, and even attempts to transform it into a "court order"[1] (Motion to Exclude at 5), three aspects of the December 20, 2005, status report are contrary to Metric's motion to exclude. First, the extension was agreed upon after Metric's experts had conducted their analysis and issued their reports, but before their depositions had been taken by the Government and before Metric had produced its experts' work papers – which were not produced to the Government until approximately March 1, 2006, well after the February 15, 2006, deadline for defendant's expert reports. Exhibit D. Second, the December 20, 2005, status report makes it clear that the parties were "continuing with discovery" and did not restrict further discovery activities to issuance of defendant's expert reports and depositions – as alleged by Metric's motion to exclude. Exhibit A. Third, the December 20, 2005, status report clearly provides that the defendant's experts

---

[1] The Court's order of December 21, 2005, stated that "The Court acknowledges the Parties' Joint Status Report, filed on December 20, 2005. The Court hereby requests that the parties submit a further Joint Status Report on or before March 30, 2006." The Court's order did not restrict the "continuing discovery" noted in the status report solely to expert reports and deposition.

have been retained but "will conduct their analysis" prior to issuing their reports. Id.

The Government deposed Metric's alleged experts[2] on January 31 and February 1, 2006, (the one-day delay occurred to accommodate Mr. Meacham's schedule) but the Government's experts required additional time to conduct their analysis, based largely upon the need to obtain Metric's experts' work papers and other discoverable information that had not been previously produced or copied by the Government.[3] Promptly after the January/February 2006 depositions, on February 7, 2006, defendant's counsel sent Metric's counsel an informal discovery request (attached in full as exhibit I), that said, in part:

> I think our deposition trip went smoothly and that we're on track to "promptly" conclude discovery, etc.

---

[2] The qualifications of Metric's expert witnesses are suspect, at best, and are likely to be challenged at trial. Further, the scope of Metric's cost analyst's work was restricted solely to a critique of a DCAA audit report of a portion of Metric's claim and is, as such, irrelevant to proving Metric's claim itself.

[3] We acknowledge that the process of retaining our experts and having them conduct their analysis did not make significant progress prior to the depositions of Metric's expert witnesses. This is not particularly remarkable, however, given the fact that Metric's experts did not produce their work papers concurrently with their reports and that the level of cooperation that had existed previously in this case lead defendant's counsel to believe that Metric would continue to be reasonable with regard to disclosure of discoverable information. Although the discovery process has been slow at times, it has never ceased, mutually agreed-upon discovery events have been scheduled and occurred, and progress has continually been made towards its conclusion.

> Although our experts will not be able to complete their work in time for us to report to the Court on 3/30 that we're done, I'm sure we'll be able to propose a schedule that has acceptable milestones for expert reports, depositions, etc., leading up to, and including, proposed dates for pretrial submissions and trial.

(emphasis supplied).

The February 7, 2006, discovery request clearly notified Metric that we were not on track to supply expert reports by February 15, 2006, and reasonably anticipated continued cooperation in proposing final dates for the conclusion of expert discovery and pretrial proceedings.[4] In addition, the discovery request asked for three things; 1) access to a file cabinet of project documents that had previously been made available to Government counsel in May 2005 - prior to the time that any experts had been retained by either party; 2) financial documents that would be examined by the Government's damages consultant and that had not been provided to the Government at any time in the past; and 3) information related to Metric's main "subcontractor" (whose costs comprise a large portion of Metric's claimed damages) that had never been provided to the Government in any form. Exhibit I.

Metric did not respond to our February 7, 2006, request until February 15, 2006, questioning our experts' need to review

[4] Despite Metric's claim of "prejudice," no dates for pretrial proceedings or trial have been established. Motion to exclude at 6.

Metric's documents "again." Exhibit G, H. We supplied a more specific list of the information sought by our experts in a request of February 16, 2006 (Exhibit F), and even suggested probable responses "make your responses even easier." Id. We also attempted to confirm a March 9, 2006, document inspection visit to Metric's office with an emails dated February 7, 15, 16, and 27, 2006. Exhibit E, F, H, I. It was at this point, on March 1, 2006, that Metric refused to produce further information beyond its experts' work papers, cancelled our March 9, 2006, document inspection visit, and Metric's refusal became a genuine discovery dispute. Exhibit D.

Contrary to the facts summarized above, Metric's motion to exclude suggests that:

> The government's counsel has disregarded the Court's Order and ignored discovery deadlines. Government's counsel has completely disregarded the agreement to extend discovery solely for experts reports and depositions, and has attempted to complete its document discovery long after the discovery deadline.

Motion to Exclude at 5. It is difficult to understand how Metric can make these arguments when the December 20, 2005, joint status report expressly provided that the parties were "continuing with discovery" and it was Metric who refused to comply with the Government's February 7, 2006, discovery request. Metric's statement that "[t]he United States never requested additional documents prior to the end of discovery" is flatly contradicted

by our February 7, 2006, request for access to Metric's files, Metric's cost documents, and Metric's subcontractor's files.

In sum, Metric's motion to exclude fails because the parties expressly represented that they agreed to "continuing with discovery" and Metric itself refused to continue with discovery in response to our requests for discoverable information.

II. Metric Should Be Compelled To Produce The Discoverable Information Requested By The Government, And Necessary For Our Experts' Work

As shown above, the Government has made requests for clearly-discoverable information that has been refused by Metric. The information sought by the Government falls into three categories:

1) Metric's project records maintained at Metric's offices.

2) Financial information related to this project and to Metric's corporate finances (relevant to several aspects of Metric claim including overhead claims, markups, etc.).

3) All relevant project and financial records of Metric's subcontractor "E.L. Holmes" in whose name Metric seeks recovery of substantial costs.

Exhibit F [list].

Our request of February 16, 2006, contains the specific documents that Metric should be compelled to provide, all of

which are undisputably discoverable.[5] Exhibit F. Metric's refusal to produce the requested information is unjustified. The only basis for objecting to production of this information, other than its unavailing argument of timeliness, is that Metric produced its project records to Government counsel in May 2005 and that the Government should be in possession of some of the same documents requested. Exhibit C, D, G. These objections are unfounded because Government counsel inspected the project records long before Metric had even retained its own experts and, when requested, Metric could not cite any authority that prevents a second inspection of documents anyway. Exhibit B. Further, as we explained to Metric previously, the fact that Metric is not in possession of certain critical documents (such as the contract) is relevant to the issue of Metric's diligence and good faith in formulating, assembling, and certifying its claim. Exhibit B. This is information that our damages analyst, a Certified Fraud Examiner, considers in conducting his analysis and rendering his opinions.

The remainder of the information that we seek (subcontractor records and Metric's financial statements, etc.) has never been produced to the Government at all, and Metric has never suggested that it is not discoverable. It appears instead that Metric is

---

[5] We have compiled our list as a separate document at Exhibit J. We have also noted that item 14, Metric's experts' work papers have already been produced.

reluctant to produce this information -- which heightens our suspicions regarding the questionable aspects of Metric's claim that caused us to request this information in the first place.

In short, Metric possesses discoverable information that is clearly relevant, or at least calculated to lead to the discovery of admissible evidence, and Metric has refused to produce that information despite our requests. Instead, Metric has ceased cooperating in discovery and refused to provide the information that was requested prior to the close of "continuing" discovery. Metric should be compelled to produce the requested information set forth in Exhibit J.

In addition to an order compelling Metric to produce the information requested by the Government, we seek a suspension of further proceedings in this case until the Government reports to the Court that Metric has fully complied with our requests, whereupon further proceedings can be scheduled.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that Metric's motion to exclude be denied and our motion to compel be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Deborah A. Bynum
DEPORAH A. BYNUM
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on April 13, 2006, a copy of foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESSES AND DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERABLE INFORMATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian S. Smith

# Appendix

**Exhibit A**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| METRIC CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-635C |
| | ) | (Judge Charles F. Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court’s order of August 8, 2005, the parties have conferred and respectfully report that they are continuing with discovery and exchange of expert materials. Depositions of plaintiff’s experts are scheduled for January 30 and 31, 2006, and the defendant has retained experts who will conduct their analysis, issue reports by February 15, 2006, and be available for deposition to be conducted by March 15, 2006. We propose to advise the Court of the status of the case and to propose a schedule for pretrial proceedings in a status report to be filed by March 30, 2006.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Deborah A. Bynum
DEPORAH A. BYNUM
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney

Case 1:04-cv-00635-CFL Document 17 Filed 04/13/2006 Page 15 of 26

Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

s/Steven D. Meacham
Peel Brimley, LLP
2014 East Madison Street
Suite 100
Seattle, Washington 98122-2965
206/770-3339 Telephone
206/770-3490 Fax

Attorney for Plaintiff

December 20, 2005

# Exhibit B

Date: Fri, 3 Mar 2006 10:34:16 -0800 (PST)
From:"Brian Smith" <briansmithjustice@yahoo.com>
Subject: Metric v. U.S.
To:"steve meacham" <smeacham@peelbrimley.com>

Steve,

I'm going to keep this short because I'm traveling now -- same trip that will bring me/us to California next week.

1. I sent you an unburdensome document request about two weeks ago. You have not responded.

2. You have known that I was planning to revisit the documents at Metric for some time (briefly discussed in Seattle), and I have planned my trip to include that visit accompanied by two experts who have also planned accordingly. You were first cooperative and did not object until recently.

3. The fact that DCAA conducted an audit of one portion of this case is not relevant to whether the Government's experts can obtain additional documents. I've already said we will not get copies of docs that we obtain from DCAA.

4. Your refusal to respond to my document requests (some of which are clearly not things that were not produced to me at Metric, or to DCAA) and to make Metric's documents available "again"--- based only upon the fact that I inspected some documents before -- is not justified by a case or rule or otherwise. It will impede the Govt. experts' work and cause at least a day-for-day extension of the expert/pretrial schedule.

5. Please get back to me asap with a response to my document requests AND verification that we can see the doucmenets requested at Metric next Thursday. Or, please confirm that you still will not respond to my document requests and make Metric's documents available next Thursday. If that is still your position, I believe a discovery dispute exists despite my effort to resolve it and that we are at an impasse.

-- Brian

# Exhibit C

Subject: RE: Metric v. U.S.
Date: Fri, 3 Mar 2006 17:22:42 -0800
From:"Steve Meacham" <smeacham@peelbrimley.com>
To:"Brian Smith" <briansmithjustice@yahoo.com>

Brian:

The document request that you sent me two weeks ago was the day after your expert reports were due. I did not agree to reopen document discovery. The only open discovery was for expert reports and depositions. I will provide you with copies of everything relied upon by my experts. I also consider your request to be burdensome. You want copies of the contract. What? The government doesn't have a copy of the contract or you just want to make Metric provideit rather than getting it from the government. These were submitted to the government. What? It's more convenient for you to have us dig them up than it is to get them from your own files. Besides, I have not seen copies in Metric's documents. Meeting minutes, correspondence, emails, precon meeting minutes, schedules, contract compliance documents, and notices of defective work are all items made available to you in discovery and should be in the government's file. Have your people track this stuff down. Material slips, equipment logs, and estimates (to the extent Metric has them) were previously provided to you and to the DCAA. They have a copy of the cost information that includes material costs. I have already provided you with the Hainline working papers and will try to get you a copy of the "Summary of Beach Landing Availability" spreadsheet in electronic format. To the extent Metric has the information requested in your email of 2/16 listed under items 16, 17, and 18. They were produced to the DCAA and we provided them with copies of everything requested.

Steve

# Exhibit D

From: smeacham@peelbrimley.com [**mailto:smeacham@peelbrimley.com**]
Sent: Wednesday, March 01, 2006 12:00 PM
To: Smith, Brian (CIV)
Subject: RE: Metric Const v. U.S.

Brian:

You should have received a CD with Stuart and Paul working papers.

Metric will not make its documents available to you again in 1000 Oaks. You reviewed them, marked what you wanted, per your request the documents you wanted were scanned and copies provided to you. The same also occurred with the DCAA.

I will provide your expert with access to those documents relied upon by Metric's experts in Seattle. Let me know when you want that to occur.

Steve

# Exhibit E

________________________________

From: Brian.Smith@usdoj.gov [**mailto:Brian.Smith@usdoj.gov**]
Sent: Mon 2/27/2006 11:59 AM
To: Steve Meacham
Subject: RE: Metric Const v. U.S.

Steve,

Please confirm that we will get access to Metric documents on Thursday March 9 at M's office in 1,000 Oaks. Let's start at 10am and it'll probably take longer than my own inspection -- but no more than the rest of the day.

Thanks,

-- Brian

# Exhibit F

Date: Thu, 16 Feb 2006 15:52:12 -0800 (PST)
From:"Brian Smith" <briansmithjustice@yahoo.com>
Subject: Metric expert discovery
To:"steve meacham" <smeacham@peelbrimley.com>

Steve,

Continuing our experts' work, and in anticipation of our visit to Metric in early March, I am sending a list of documents that our experts need to see in lieu of a formal document request. For each numbered item, please indicate status to the effect of "at metric, available for review," "does not exist," "will be sent to you asap," or "not at metric but exists at [location where we can inspect]." I can't think of any other possible response except perhaps "exists but object to production," which I would hope you won't assert. I have also added a comment to a many of them myself [in brackets] that may make your responses even easier -- mostly supposing that docs are in the file cabinet I saw which was supposed to be all SNI-related docs.

Please get back the responses asap, but certainly before our visit in March. I'm sure you understand that our experts' completion of their work is dependent upon the level of cooperaton that we receive from Metric.

I suspect our need to obtain copies of Metric's docs will be greater for the experts than it was for my fact discovery. Let's start thinking about the best/fastest way to obtain [electronic] copies of what the experts want. Obviously, it would speed things along even faster if you can provide copies of things beforehand [i.e. financial statements, audits, equip lists, etc.].

Thanks,

-- Brian

List:

1. Contract including Division 1, and Specifications for contracts 6807 and 5553 [I believe I saw these in the file cabinet @ Metric, please confirm].
2. Certified Payroll for years 1998-2002.
3. Meeting minutes for all meetings held between Metric and the Navy/COE [should be in file cabinet, please confirm]
4. Correspondence and Email related to claim issues. [should be in file cabinet, please confirm]
5. Preconstruction conference meeting minutes [should be in file cabinet, please confirm]
6. Material slips [should be in file cabinet, please confirm]
7. Equipment Logs [basically any/all documents related to the equip that was used on SNI by any party]
8. Schedules and schedule updates in whatever form was used on the Projects: electronic files, if possible [file cabinet, confirm?]

9. Contract compliance notices [file cabinet, confirm?]
10. Notices of defective or rejected work [file cabinet, confirm?]
11. Bid documents; planned material quantities for Metric, and Holmes bid estimate to Metric.
12. Metric's subcontract/agreement with Holmes
13. Barge rental invoices [any that arent included in cert claims]
14. All of Hainline and Pepin's work papers in any form.
15. Hainline's Summary of Beach Landing Availability spreadsheet in electronic form – copies we have are unreadable.
16. Financial statements, audit reports, footnotes, and accompanying supplementary schedules and information for MCCI and Holmes for 1997 to 2005.
17. Accounting policies and procedures, including capitalization and depreciation policies and procedures for MCCI and Holmes for 1997 to 2005.
18. Lists of all equipment owned by MCCI and Holmes 1997-2002, including equipment description, purchase date, acquisition costs [not quite the same as #4, above]

# Exhibit G

Date:Wed, 15 Feb 2006 16:09:57 -0800 (PST)
From:"Brian Smith" <briansmithjustice@yahoo.com>
Subject:RE: Metric v. U.S. document/expert discovery -- reminder?
To:"Steve Meacham" <smeacham@peelbrimley.com>

Good about Burnell/Peppin wps.

Docs produced "again" are part of our experts' work. DCAA may not have chosen to look @ Holmes recs, but our cost expert needs 'em. If Metric doesn't have them, where are they? Let me know if they're sendable, or if we need to arrange a visit to Holmes.

Thanks,

-- Brian

--- Steve Meacham <smeacham@peelbrimley.com> wrote:

> Stuart Burnell is gathering his work papers. I have a copy of
> Paul's. Once I get both, I will email them to you. My recollection
> is we provided all the documents to you at Metric's office. The DCAA
> looked at Metric's equipment costs and elected not to look at Holmes
> (which we don't have). Why are we producing them again when
> discovery was only continued for expert reports?
> Steve

# Exhibit H

Date:Wed, 15 Feb 2006 15:42:21 -0800 (PST)
From:"Brian Smith" <briansmithjustice@yahoo.com>
Subject:Metric v. U.S. document/expert discovery -- reminder?
To:"steve meacham" <smeacham@peelbrimley.com>

Steve:

Forgive me if this is a repeat of things I've already asked, but I don't recall rec'ing a response from you so:

1. We want to visit Metric on March 8 or 9 (or both) to review docs. Please confirm.

2. I'll send a list of docs that may notta been in the file cab I saw: I know the cost expert wants to see both Metic and E. Holmes' equipment records (i.e. acquisition, maintenance, etc).

3. Both experts said they have workpapers -- please send pdf of them asap.

Thanks,

-- Brian

# Exhibit I

From: Smith, Brian (CIV)
Sent: Tuesday, February 07, 2006 4:39 PM
To: 'smeacham@peelbrimley.com'
Subject: Metric Const v. U.S.

Steve:

I think our deposition trip went smoothly and that we're on track to "promptly" conclude discovery, etc. Although our experts will not be able to complete their work in time for us to report to the Court on 3/30 that we're done, I'm sure we'll be able to propose a schedule that has acceptable milestones for expert reports, depositions, etc., leading up to, and including, proposed dates for pretrial submissions and trial.

To that end, I need to bring the experts by Metric's offices to go through M's files for this project. I assume since I was shown all project related files in "that file cabinet" that we can simply do the same thing again. Our scheduling expert (Patti Jones) anticipated that all schedule related materials for the project will be located in those files. It is anticipated that our cost expert (David Cotton) will need to see some things that are not in the file cabinet and were not examined by DCAA, but we will make a specific request for those in advance of our visit. Mr. Cotton has access to DCAA's workpapers so he will try not to be redundant of anything that was already produced to DCAA.

Please arrange so that we can visit Metric's office on Thursday March 9 to examine documents. Also, are the Holmes files related to this project contained in Metric's files, or at a separate location? If separate, where are they? We may need to examine them as well, unless they're so nonvoluminous that they can be sent to Metric, or directly to us. One more thing, both of Metric's experts indicated that they have workpapers in your offices. Please scan/send them to me, or send them to me and I'll scan them.

Thanks,

-- Brian

# Exhibit J

1. Contract including Division 1, and Specifications for contracts 6807 and 5553

2. Certified Payroll for years 1998-2002.

3. Meeting minutes for all meetings held between Metric and the Navy/COE

4. Correspondence and Email related to claim issues

5. Preconstruction conference meeting minutes

6. Material slips

7. Equipment Logs [basically any/all documents related to the equip that was used on SNI by any party]

8. Schedules and schedule updates in whatever form was used on the Projects: electronic files, if possible

9. Contract compliance notices

10. Notices of defective or rejected work

11. Bid documents; planned material quantities for Metric, and Holmes bid estimate to Metric.

12. Metric's subcontract/agreement with Holmes

13. Barge rental invoices

14. All of Hainline and Pepin's work papers in any form. [***Already produced by Metric***]

15. Hainline's Summary of Beach Landing Availability spreadsheet in electronic form – copies we have are unreadable.

16. Financial statements, audit reports, footnotes, and accompanying supplementary schedules and information for MCCI and Holmes for 1997 to 2005.

17. Accounting policies and procedures, including capitalization and depreciation policies and procedures for MCCI and Holmes for 1997 to 2005.

18. Lists of all equipment owned by MCCI and Holmes 1997-2002, including equipment description, purchase date, acquisition costs [not quite the same as #4, above]