IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| METRIC CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-635C |
| | ) | (Judge Charles F. Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S POST-TRIAL SUR-REPLY

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

ROBERT C. BIGLER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 307-0315
Fax: (202) 514-7988

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT’S POST-TRIAL SUR-REPLY BRIEF . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. CONTENTIONS OF FACT . . . . . . . . . . . . . . . . . . . 1

A. Facts Related To Metric’s Pontoon Claim . . . . . 1

B. Facts Related To Metric’s Arresting Gear Claim . . . . . . . . . . . . . . . . . . . . . . . . 2

C. Facts Relating To The Contaminated Soil Removal Claim . . . . . . . . . . . . . . . . . . . . . 4

D. Facts Relating To Metric’s Use Of Blue Book Rates . . . . . . . . . . . . . . . . . . . . . . . . 5

E. Facts Relating To Metric’s Waiver Of Its Claims . . . . . . . . . . . . . . . . . . . . . . . . 6

II. CONTENTIONS OF LAW . . . . . . . . . . . . . . . . . . . 8

A. Metric’s Pontoon Claims Are Contractually Unavailing . . . . . . . . . . . . . . . . . . . . 8

1. Plaintiff Is Not Entitled To Profit On Its Delay Claim . . . . . . . . . . . . . . . . . 8

2. There Was No Change . . . . . . . . . . . . . 9

3. Metric’s Damage Claim Must Be Denied . . 10

B. Metric’s Arresting Gear Claims Are Contractually Unavailing . . . . . . . . . . . . . . . . . . . 11

C. Metric’s Contaminated Soil Removal Claim Is Contractually Unavailing . . . . . . . . . . . 11

D. Metric’s Damages Claim Is Insufficient . . . . 11

E. Metric’s Reliance Upon The “Spearin Doctrine” Is Wrong . . . . . . . . . . . . . . . . . . . . 13

F. Metric Waived Its Right To Assert Its Claims . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

Adler Constr. Co. v. United States,
191 Ct. Cl. 423 F.2d 1362 (1970) . . . . . . . . . . . . 16, 17

Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . . . . . 19

C & H Commercial Contractors, Inc. v. United States,
35 Fed. Cl. 246 (1996) . . . . . . . . . . . . . . . . . . 15

Cannon Constr. Co. v. United States,
162 Ct. Cl. 319 F.2d 173 (Ct. Cl. 1963) . . . . . . . . . 16

Daewoo v United States,
73 Fed. Cl. 547 (2006) . . . . . . . . . . . . . . . . . . 13

Ets-Hokin Corp. v. United States,
190 Ct. Cl. 668 F.2d 716 (1970) . . . . . . . . . . . . . . . 9

Fraass Surgical Mfg. Co., Inc. v. United States,
205 Ct. Cl 505 F.2d 707 (Ct. Cl. 1974) . . . . . . . . . 16

Gemini Electronics, Inc. v. United States,
65 Fed. Cl. 55 (2005) . . . . . . . . . . . . . . . . . 15, 16

George H. Whike Construction Co. v. United States,
140 F.Supp. 560 (1956) . . . . . . . . . . . . . . . . . . 14

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . 11

John Massman Contracting Co., v. United States,
23 Cl. Ct. 24, 29 (1991) . . . . . . . . . . . . . . . . . 19

Johnson, Drake & Piper, Inc. v. United States,
209 Ct. Cl. 313, 531 F.2d 1037 (1976) . . . . . . . . . . 18

Jowett, Inc. v. United States,
234 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . . . . 15,16

Koby v. United States,
53 Fed. Cl. 493, 497 (2002) . . . . . . . . . . . . 10

Laburnum Const. Corp. v. United States,
325 F.2d 451 (Ct. Cl. 1963) . . . . . . . . . . . . . . 8, 9

Langoma Ind. Inc. v. United States,
133 Ct. Cl. 135 F.Supp 282 (1965) . . . . . . . . . . . . . 16

Mingus Constructors Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . 21

National Steel and Shipbuilding Co. v. United States,
49 Fed. Cl. 579 (2001) . . . . . . . . . . . . . . . . . . 20

Navra Harris Construction Corp. v. United States,
574 F.2d 508 (Ct. Cl. 1978) . . . . . . . . . . . . . . . 15

Penguin Industries, Inc. v. United States,
209 Ct. Cl. 530 F.2d 934 (1976) . . . . . . . . . . . . . 14

Robinson v. United States,
305 F.3d 1330 (Fed. Cir. 2002) . . . . . . . . . . . . . . 11

S.S. Silberblatt, Inc. v. United States,
228 Ct. Cl. 729 (1981) . . . . . . . . . . . . . . . . . . . 8

DEFENDANT'S POST-TRIAL SUR-REPLY BRIEF

In accordance with the Court's post-trial order of October 30, 2007, defendant, the United States, respectfully submits the following post-trial sur-reply.

INTRODUCTION

Plaintiff's Post-Trial Reply Brief ("Pl. Reply Br.") includes numerous factual and legal contentions that are not supported by the facts or applicable law. Defendant responds to plaintiff's factual and legal contentions below.

I. CONTENTIONS OF FACT

A. Facts Related To Metric's Pontoon Claim

In its reply brief, Metric argues that Metric could not have hired a barge that was more compatible with the pontoon and that the "government provides no evidence to support its position that another barge was available." Pl. Reply Br. at 2. But plaintiff's own witnesses admitted that Metric could have hired the Navy barge owned by Foss Marine. Tr. 1173 ("Yes. We could have hired Foss Marine, that's true.")(Miller). Metric's witness also testified that Metric never even tried to hire the Foss barge during the period that the Navy required Metric to land on the pontoon. Tr. 1174 (Miller).

In response to the Government's claim that the pontoon did not delay Metric because Metric never ran out of materials, Metric does not dispute that it did not run out of materials, but

responds that it reduced its crew to avoid running out of materials. Pl Reply Br. at 4. But plaintiff provides absolutely no support for this argument that it reduced the size of its crew. See Pl. Reply Br. at 4.

Plaintiff also ignores the fact that Section 1600.1.6.3.5 explicitly provided that the remedy to Metric for aborted or impossible barge landings was a “no cost time extension.” DX 1008 pg. 104. Since the inception of its work at SNI, Metric had invoked the no-cost-time-extension remedy several times when “Metric received numerous time extensions because of delays in landing the barge due to adverse conditions.” Pl. Br. 6.

B. Facts Related To Metric’s Arresting Gear Claim

Metric now appears to argue that language contained in the change order stating that “[t]he new concrete shall be flush with the surrounding surface and shall not have any deviation of more than 3/32 of an inch” means that “[t]he 3/32 [of an inch] deviation relates to the concrete surface, not the elevation difference between the concrete and adjacent surfaces.” Pl. Reply Br. at 5. Plaintiff continues by arguing that the issue is what the Navy considers “flush.” Id. This is an unsuccessful attempt to blame the problem on the Navy because it is clear that the term “flush” does not leave any tolerance for deviation. However, plaintiff’s own witnesses testified that as an accommodation, after Metric’s repeated inability to comply with

the contract requirements, the Government relaxed the "flush" requirement to permit a three thirty-seconds of an inch tolerance between the asphalt and the concrete, and permitted Metric to demolish an additional section of the runway in order to use Metric's asphalt paving machine to properly install the asphalt. Tr. 269-70 (Kostelny); PX 129. Metric further admitted that the asphalt was never rejected by the Navy when the asphalt was within the three thirty-seconds of an inch requirement. Tr. 269-270 (Kostelny).

Metric argues that there were not loose rocks, but Mr. Douglas testified that the

> problem was [] that it was very rocky. The problem was with my foot I could get rocks that would pop up in the areas of where they were patching . . . it was arresting gear on a runway where jets would come in and use the arresting gear. The belt would rub up on the asphalt and it created a [foreign object] issue.

Tr. 2268-69 (Douglas). Clearly, the excessive exposed aggregate allowed the arresting gear to dislodge rocks in the asphalt which were then foreign objects or loose objects that are not allowed on a runway because the rocks may be caught in the jet engines of aircraft destroying the engine and possibly causing an aviation accident.

With regard to Metric's failure to reinstall the rubber rails, Metric argues that drawing C-25, which requires that the rubber rails be reinstalled, does not apply, but that PC # 25, Modification P00017 applies which states that Metric was to

dispose of the "existing concrete and rails of the arresting gears . . ." Pl. Reply Br. at 7. Plaintiff argues that this is supported by the fact that the Government would provide a template for the location of the holes and that a template would not be necessary if Metric was required to use the existing rails. Pl. Reply Br. at 7. But Metric is incorrect because the purpose of the template was to drill holes in the steel I-beam, not the rubber rails. In fact, drawing C-25, which clearly requires that the rubber rails be reinstalled, similarly states that the Government "will furnish template for location of holes" in the I-beam. DX1018, pg. 58. Therefore, that the Navy agreed to supply a template does not mean that Metric was not required to reinstall the existing rubber rails.

As we pointed out in our post-trial brief, Metric now attempts to claim that it is entitled to recover damages of $2,181,297 for alleged changes and delays in the performance of the $50,000 arresting gear change order. Such a claim is simply ludicrous.

C. <u>Facts Relating To The Contaminated Soil Removal Claim</u>

In the interest of brevity, please see our discussion of the contaminated soil removal claim in Section I(D) of our post-trial brief.

D. Facts Relating To Metric’s Use Of Blue Book Rates

Instead of basing its ownership costs upon Metric’s actual equipment records, Metric calculated hypothetical ownership costs using generic “blue book rates” obtained from a Dataquest guide book. Pl. Br. at 34. Metric argues that it was allowed to do this because the Navy agreed that Metric could use blue book rates. Metric also selectively reads FAR 31.105(d)(2)(i) as support for use of the blue book rates arguing that the blue book rates qualify as a predetermined schedule of construction use rates. Pl. Reply Br. at 9. Yet Metric completely ignores the fact that “[a]ctual cost data shall be used when such data can be determined . . . .” FAR 31.105(d)(2)(i)(A). The regulation continues stating that “[w]hen such costs cannot be so determined, the contracting agency may specify the use of a particular schedule of predetermined rates . . .” Id. In other words, the Navy could only specify use of the blue book as a schedule of predetermined rates when actual costs could not be determined. This means that Metric should have tracked and used actual costs whenever possible. But Metric made no effort to use actual costs. Instead, Metric simply used blue book rates for everything even when the blue book rates were inflationary.

For instance, Mr. Cotton compared the actual costs for six items to Metric’s claimed costs under the blue book. Even though Mr. Cotton was only able to analyze six items because Metric

failed to provide all of its financial records, Mr. Cotton's comparison revealed that the use of the blue book for those six items inflated Metric's claim by $2,456,870. DX 1002, pgs. 25, 123. Plaintiff then argues that Mr. Cotton failed to include indirect costs in this calculation. Pl. Reply Br. at 10. However, Mr. Cotton testified that removing these indirect costs was required by the blue book. Tr. 1935 (Cotton).

As we established in our post-trial brief, there is no contractual provision that authorizes or mandates the use of blue book rates for an equitable adjustment or certified claim. See Tr. 1056 (Mr. Miller testified that it was not a written agreement). Furthermore, the Government certainly never agreed to compensate Metric for change order work using an inflationary costing technique.

E. Facts Relating To Metric's Waiver Of Its Claims

Metric does not dispute that it waived and released its claims by executing Modification No. P00001 to the Roadway project and Modification No. P000017 to the Airfield project. Modification P00001, dated February 28, 2000, states:

> CONTRACTOR'S STATEMENT OF RELEASE
>
> Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised.

DX 1001 pg. 143. The second modification, P00017, relating to the arresting gear, contains identical release language. DX 1001, pg. 145. However, Metric now argues that these releases did not include the pontoon claim.

Metric does not dispute that it failed to include a reservation of rights when it signed Modification Nos. P00001 and P000017 which released Metric's claims. Pl. Reply Br. at 11. Metric also does not dispute that it did not document its alleged conversation with the contracting officer where Metric was allegedly assured that the release contained in Modification Nos. P00001 and P000017 did not release Metric's Pontoon claim arguing that "not everything on this project has a paper trial." Pl. Reply Br. at 12.

Metric now argues that executing these modifications did not release Metric's pontoon claim because the releases were limited to "the work as herein revised." However, as stated in our Contentions of Law, Section II(G) below, the burden is on plaintiff to include a reservation of rights that specifically lists known claims or to demonstrate that an exception to the general rule that the release applies. Metric has not demonstrated that the release should not apply. By executing these two modifications, Metric waived its claims.

## II. CONTENTIONS OF LAW

### A. Metric’s Pontoon Claims Are Contractually Unavailing

#### 1. Plaintiff Is Not Entitled To Profit On Its Delay Claim

Plaintiff is simply incorrect when it attempts to argue that it is entitled to profit on its delay claim. Plaintiff goes so far as to charge that the Government’s statement that profit is not allowed on a delay claim is a “misleading statement of the law.” But it is plaintiff that is quoting the Government’s brief out of context and misleading the Court. The Government simply argued, relying upon S.S. Silberblatt, Inc. v. United States, 228 Ct. Cl. 729 (1981), that “as profit is not allowed on a delay claim, plaintiff is not entitled to recover the profits included in its claim.” Def. Post-Trial Br. at 16. Plaintiff’s own witnesses testified that Metric’s claim was a “delay claim.” Tr. 637 (Holmes); Tr. 1598 (Burnell). Moreover, plaintiff refers to its claim as a delay claim several times in its post-trial reply brief. Pl Reply Br. at 15 (“Mr. Burnell’s analysis . . . is an accepted methodology for proving delay claims”); Id. at 16 (“the pontoon installation delayed the delivery”); Id. at 17 (“both projects could have completed timely, but for the pontoon delay.”). The Government, in its Post-Trial Brief, simply relied upon what the court in Laburnum Const. Corp. v. United States, 325 F.2d 451 (Ct. Cl. 1963) referred to as the “long established rule” that a contractor is “entitled to recover only its loss

incurred on account of the delay," but not profit on the costs incurred. Id. at 459.

2. There Was No Change

Metric argues that a constructive change occurs when the "contracting officer, without issuing a formal change order, requires the contractor to perform work or to utilize materials which the contractor regards as being beyond the [contractual requirements]." Pl Reply Br. at 12 (citing Ets-Hokin Corp. v. United States, 190 Ct. Cl. 668, 420 F.2d 716, 720 (1970)). Then, without any explanation as to why placement of the pontoon was a constructive change, plaintiff urges that "*profit* is generally included as an integral part of the pricing an 'equitable adjustment.'" Pl. Reply at 13 (citations omitted) (emphasis original). But as we demonstrated in our post-trial brief, Metric's choice of Daytona Beach, Metric's use of a specific barge, and Metric's previous experience conducting beach landings, were not contractually guaranteed to continue indefinitely in the manner that Metric preferred. The contract provisions governing barge landings are quite restrictive and Metric simply had no right to unfettered access to beach landings on Daytona Beach. DX 1008 pg. 104-05. The Government's installation of the landing pontoon, and instruction for Metric to use it from January to June of 1999, was simply not a change to Specification Section 1600.1.6.3.5.

3. Metric's Damage Claim Must Be Denied

Even if the Government's requirement to land on the pontoon was a change to the contract (which it was not) and even if it caused delays, Metric had an obligation to mitigate its damages by renting a barge that was compatible with the pontoon rather than continuing to use a barge that could not land on the pontoon as an excuse to inflate its claim.

Metric now argues that the Government "provides no evidence to support its position that Metric was obligated to rent a barge compatible with the pontoon." Pl. Reply Br. at 15. Metric argues that the burden is on the Government to demonstrate that "reasonable possibilities for mitigation existed and were ignored." Pl. Reply Br. at 14 (citing Koby v. United States, 53 Fed. Cl. 493, 497 (2002)). Metric continues arguing that "it was not feasible or even possible for Metric to procure another barge." Pl. Reply Br. at 15. Yet plaintiff's own witnesses admitted at the trial that Metric could have hired the Navy barge owned by Foss Marine. Tr. 1173 ("Yes. We could have hired Foss Marine, that's true.")(Miller). Metric's witness also testified that Metric never even tried to hire the Foss barge during the period that the Navy required Metric to land on the pontoon. Tr. 1174 (Miller). Metric failed to meet its duty to mitigate its damages by failing to hire a compatible barge costing, at most, $15,000 to $30,000 per month for five months (or $150,000) rather

than unsuccessfully continuing to use its own barge that it knew was not compatible with the pontoon and then attempting to claim that the pontoon caused delay resulting in Metric's alleged $3,569,261 in damages.

As we stated in our post-trial brief, plaintiff was required to make reasonable efforts to mitigate its damages. Indiana Michigan Power Co. v. United States, 422 F.3d 1369, (Fed. Cir. 2005)("[A] party cannot recover damages for loss that he could have avoided by *reasonable efforts*." (quoting Robinson v. United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (quoting Restatement Second Contracts §350 cmt. B (1981)(emphasis original))). Here, Metric did absolutely nothing to mitigate its damages. As a result, Metric is not entitled to any damages on its pontoon claim.

B. Metric's Arresting Gear Claims Are Contractually Unavailing

Please see our factual arguments stated in Section I(B).

C. Metric's Contaminated Soil Removal Claim Is Contractually Unavailing

Please see our factual arguments stated in Section II(C) of our post-trial brief.

D. Metric's Damages Claim Is Insufficient

After filing this action in 2004 and pursuing this action for over three years, Metric now finally admits that it nearly tripled the cost of its barge from the blue book rate of $11,614

to the inflated rate of $30,000. Pl. Reply Br. at 17. At the very least, Metric knew that it inflated the barge costs when it received Mr. Cotton’s report in approximately August of 2006. Yet, it took Metric at least a year and a half to admit that its inflated barge claim was incorrect, which shows the effort Metric is willing to expend to pursue an inflated claim. This reduction from $30,000 to $11,614 reduces Metric’s claim by approximately $486,605. DX 1002, pg. 18.

Moreover, as we stated in our post-trial brief, Metric improperly depreciated its barge over a 5-year period which further inflated the cost. Id. Defendant’s expert calculated Metric’s cost of ownership using a 20-year useful life which resulted in a barge cost of $4,717.01 per month which is well below the monthly cost of $11,614 that Metric is now claiming. Id.

Metric also misapplied the blue book applying a wholly unsupported 125% so-called "area adjustment factor," which further inflated its claim. DX 1002, pgs. 22-27. Metric simply ignores that the main factor in determining the regional adjustment factor is to allow the adjustment for shorter working seasons in colder climates. DX 1002, pgs. 26-27. Metric makes a simple conclusory argument that SNI is a “corrosive environment” and that a “25% severity factor is not unreasonable.” Pl. Reply Br. At 17. Metric ignores the fact that SNI is off the coast of

Southern California. Regional adjustment factors for Southern California vary from .93 to 1.0, DX 1002, pg. 125, which reduces the blue book rate rather than increases the rate as Metric did by improperly using a regional adjustment factor of 1.25, thereby increasing Metric's owned equipment claim by 25%.

Again, the use of clearly inflated equipment rates in a claim calculation is patently improper. In Daewoo v United States, 73 Fed. Cl. 547 (2006), this Court refused to award damages where the "plaintiff purposely avoided looking at its own acquisition costs in favor of the higher manual [i.e. rate book] numbers [and] also applied the manual rates improperly and inconsistently." Daewoo, 73 Fed. Cl. at 591-2. Therefore, Metric's use of inflationary costing techniques should be rejected by this Court.

E. Metric's Reliance Upon The "Spearin Doctrine" Is Wrong

Metric now argues that specifications which provided for the hand placement of asphalt were design specifications, within the Spearin doctrine rather than merely performance specifications. This is incorrect. Pl. Reply Br. at 18. The contract simply states that "[i]n areas where the use of machine spreading is impractical, spread mixture by hand." DX1008, pg. 160. This is a performance specification that leaves discretion to the contractor to determine when to spread the asphalt by machine and when to spread it by hand. As we established in detail in our

post-trial brief, the option to spread the asphalt by hand is not a design specification but a performance specification and, therefore, the Spearin doctrine does not apply. Def. Post-Trial Br. at 31-34; Penguin Industries, Inc. v. United States, 209 Ct. Cl. 121, 530 F.2d 934 (1976)(failure to inform contractor how to glue ignition cartridges is not a design specification). In short, the Spearin doctrine is inapplicable.

F. Metric Waived Its Right To Assert Its Claims

Metric waived and released its claims by executing Modification No. P00001 to the Roadway project and Modification No. P000017 to the Airfield project. DX 1001, pg. 143, 145.

In its original post-trial brief, Metric argued that the releases did not include the pontoon claim because Metric received oral assurances prior to executing the releases that the release did not include the pontoon claim. Pl. Br. at 37. Plaintiff continued by incorrectly relying upon primarily three cases to support its argument that a release does not apply where the contractor receives oral assurances from the Government that the release does not apply to the contractor's claim. However, we correctly distinguished all three of these cases in our post-trial brief and plaintiff does not mention these cases in its reply brief. See Def. Post-Trial Br. at 37-39.[1]

---

[1] Plaintiff's reliance upon George H. Whike Construction Co. v. United States, 140 F.Supp. 560 (1956), is completely (continued...)

It cannot be disputed that modification P0001 to the Roadway project and P00017 to the Airfield project provided no cost extensions of time covering the same period as Plaintiff now seeks to recover costs under its pontoon claim. Further, Metric acknowledges that the release stated that it granted a time extension "due to batch plant fire, weather etc." DX 1001, pg. 143. However, Metric continues by arguing that "etc." is insufficient because it does not establish a clear and unambiguous waiver and release of the pontoon claim, mainly because the pontoon claim is not mentioned in the release. Pl. Reply Br. at 18. Metric is mistaken.

Metric cites to only two cases, Gemini Electronics, Inc. v. United States, 65 Fed. Cl. 55, 62 (2005) and Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000), as legal support for its argument that a release must "establish a clear and unambiguous waiver and release of Metric's entire pontoon

---

[1](...continued)
misplaced because that case involved assurances that "were not contrary to any provisions in the contract." Whike at 563.

Plaintiff also relied upon C & H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246 (1996). In C & H, the court found that the Government made misrepresentations to the contractor by providing oral assurances that the release clause of the modifications would not preclude future claims.

Lastly, plaintiff's reliance upon Navra Harris Construction Corp. v. United States, 574 F.2d 508 (Ct. Cl. 1978) is also misplaced because the court simply ruled against plaintiff's motion for summary judgment by holding "that a trial is necessary to determine whether such additional facts can be proved in the face of the Government's opposition." Navra, 574 F.2d at 510.

claim." Pl. Reply Br. at 18. But nothing in these cases hold that a release must include an unambiguous waiver. These cases simply stand for the proposition that "extrinsic evidence will be allowed to interpret an ambiguous clause." Gemini Electronics, 65 Fed. Cl. at 62; Jowett, Inc. v. United States, 234 F.3d 1368. Plaintiff continues by arguing that the release did not include the pontoon claim because "nothing related to the pontoon claim is mentioned in the description . . . . " Pl. Reply Br. at 18. But the law is exactly the opposite.

Plaintiff completely ignores the settled law holding that any reservation of a right or a claim for damages from a bilateral contract modification must be "manifest[ly] and explicit[ly]" set forth in the contract modification which incorporates the parties' settlement. Cannon Constr. Co. v. United States, 162 Ct. Cl. 94, 101, 319 F.2d 173, 177 (Ct. Cl. 1963). A contractor is barred from subsequently asserting all claims that were not specifically reserved. Fraass Surgical Mfg. Co., Inc. v. United States, 205 Ct. Cl. 585, 505 F.2d 707, 712 (Ct. Cl. 1974); Langoma Ind. Inc. v. United States, 133 Ct. Cl. 248, 135 F.Supp 282, 285 (1965); Cannon Constr. Co. v. United States, 162 Ct. Cl. at 100, 319 F.2d at 176. As the court held in Adler Constr. Co. v. United States, 191 Ct. Cl. 607, 423 F.2d 1362 (1970):

> The time to have reserved such claims was upon execution of the release . . . [The contractor's]

> contentions now urged that he lacked sufficient information at the time of the release to frame proper exceptions to reserve his present claims . . . do not excuse his failure to state his exceptions covering his present claims in general terms which would have sufficed the purpose of preserving his right to pursue them.

Id. at 1364. In other words, the burden is not on the Government to prove that the term "etc." releases the pontoon claim, rather, the burden is on Metric to specifically reserve the pontoon claim in the release. As we have established, plaintiff now seeks costs concerning a time period for which it had previously agreed to no-cost time extensions. As plaintiff correctly points out, the pontoon claim is not mentioned in the modification and certainly was not reserved by Metric. Pl. Reply Br. at 18. Moreover, Metric could have easily complied with this requirement by simply including a phrase stating that "Metric reserves the right to pursue its delay claim relating to the pontoon." In fact, Mr. Miller admits that he did not add a reservation of rights to the modification before he signed it, nor did he send Ms. Martonick, or anyone else, a letter memorializing his alleged discussion with Ms. Martonick. Tr. 1158-59 (Miller). As Metric failed to include this reservation, its pontoon claim must fail.[2]

---

[2] Indeed, Metric's entire defense supports our interpretation that modification P0001 of the Roadway project and P00017 of the Airfield project released all cost claims related to the time period covered by the no-cost time extensions. Stated another way, Metric's defense makes no sense because there is no reason for the Government to enter into a no cost time (continued...)

Metric also attempts to distinguish Johnson, Drake & Piper, Inc. v. United States, 209 Ct.Cl. 313, 531 F.2d 1037 (1976), by incorrectly arguing that Johnson does not apply because Johnson involved the "court's consideration of . . . pre-release conduct and communications" and because the release signed in Johnson was a general release. Yet that is exactly the situation presented here. Plaintiff relies on pre-release conduct by arguing that Metric received verbal assurances from the Government that the release did not include the pontoon claim prior to executing the releases. Pl. Reply Br. at 19; see also Pl. Br. at 37 (stating that Metric received assurances that the modification "would not release Metric's rights regarding the pontoon claim.") Therefore, just like the facts considered in Johnson, plaintiff is relying on pre-release conduct, namely alleged verbal assurances it received from the Government prior to executing the release.

Plaintiff also argues that Johnson involved a general release while the release at issue here is narrower. Plaintiff argues that this release is narrow because the release applies to anything "arising out of, or incidental to, the work as herein revised." DX 1001, pg. 143. While Johnson arguably included a more general release, that does not change the fact that Johnson

[2](...continued) extension when, as plaintiff asserts, Metric is still allowed to pursue its pontoon claim.

correctly held that the plaintiff is not allowed to rely on pre-release conduct in asserting that the release does not apply.[3] Moreover, there are other cases that apply a similar holding to situations involving narrower releases that include language limited to the "work herein revised" as contained in the releases signed by Metric. See John Massman Contracting Co., v. United States, 23 Cl. Ct. 24, 29 (1991) (accord and satisfaction barred claim by contractor who executed four contract modifications granting no cost extensions of time without any reservation of claim for additional compensation; modification expressly stated that it applied to "the changes ordered herein, for all delays related thereto, and for full performance of the changes within the time stated" (emphasis added)).

Plaintiff then attempts to shift its strategy from relying upon pre-release conduct to relying upon post-release conduct by arguing that because "there is no testimony from a government fact witness that Defendant ever asserted "waiver" or "release" in any of the numerous subsequent communications between the

[3] Under the parol evidence rule, extrinsic evidence pre-dating a written agreement may not be used "to add to or otherwise modify the terms of a written agreement in instances where the written agreement has been adopted by the parties as an expression of their final understanding." Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004). Here, plaintiff is attempting to rely upon alleged oral conversations that occurred prior to the execution of the written modification. As a result, plaintiff's reliance upon these alleged oral assurances is precluded by the parole evidence rule.

parties" that the release did not include the pontoon claim. Pl. Reply Br. at 20. In this regard, plaintiff relies upon National Steel and Shipbuilding Co. v. United States, 49 Fed. Cl. 579 (2001), but this reliance is misplaced. Plaintiff argues, based upon National Steel, that the defense of accord and satisfaction is barred when the Government considers the contractor's claim after the execution of the release. However, the court in National Steel, recognized that "[n]ot every discussion of a claim following a settlement or modification, however, will bar the defense of accord and satisfaction." Id. at 594.

With respect to the substance of plaintiff's claim, while it is true that Government witnesses at trial did not testify that the Government asserted waiver or release, plaintiff's own witnesses testified that the Government previously asserted waiver and Mr. Miller admitted that a Government auditor pointed out that the no cost time extension contained in the modifications waived plaintiff's claim. Tr. 966 (Miller).

More importantly, the burden is not on the Government to demonstrate that the Government asserted the release in subsequent discussions. The Government is relying on the plain and unambiguous language of the release which demonstrates that Metric's pontoon claim has been released. As Metric is arguing that the plain language of the release does not apply because the Government subsequently considered Metric's claim, the burden is

on Metric to put forward evidence supporting its assertion. See Mingus Constructors Inc. v. United States, 812 F.2d 1387, 1394 (Fed. Cir. 1987)(holding that exceptions to the release are strictly construed against the contractor). The Government is not required to disprove every possible exception to the general rule that the plain language of the release applies.

Therefore, at a minimum, Metric has waived any claims that occurred during the period of the 384-day extension from June 12, 1999 to June 30, 2000 (P00001) and between August 3, 2000 and November 2, 2000 (P000017). As a result, any damages awarded to Metric should not have been incurred during this period. Tr. 652-53 (Holmes); DX 1001, pg. 142-43.

## CONCLUSION

For the foregoing reasons, and those established at trial, we respectfully request the Court to find in favor of the Government and to deny Metric’s claim in total.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Robert C. Bigler
ROBERT C. BIGLER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 307-0315
Fax: (202) 514-7988

Attorneys for Defendant

February 19, 2008

CERTIFICATE OF FILING

I hereby certify that on February 19, 2008, a copy of foregoing “DEFENDANT’S POST-TRIAL SUR-REPLY” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Robert C. Bigler